**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LEE VARDAKAS, Individually and on Behalf of All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. |
| ) | **CLASS ACTION COMPLAINT** |
| AMERICAN DG ENERGY INC., JOHN ) N. HATSOPOULOS, GEORGE N. ) HATSOPOULOS, BENJAMIN LOCKE, ) CHARLES T. MAXWELL, DEANNE M. ) PETERSEN, CHRISTINE M. KLASKIN, ) JOHN ROWE, JOAN GIACINTI, ELIAS ) SAMARAS, TECOGEN INC., ) TECOGEN.ADGE ACQUISITION CORP., ) and CASSEL SALPETER & CO., LLC, ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | |

Lee Vardakas, ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

<u>**NATURE OF THE ACTION**</u>

1.    This action is brought as a class action by Plaintiff on behalf of himself and other similarly situated holders of the common stock of American DG Energy Inc. ("American DG Energy", "ADGE" or the "Company"), against American DG Energy, the Company's Co-Chief Executive Officers John Hatsopoulos and Benjamin Locke and the members of the Company's board of directors (collectively the "Director/Officer Defendants"), Tecogen, Inc. ("Tecogen"), Tecogen.ADGE Acquisition Corp. ("Merger Sub"), and Cassel Salpeter & Co., LLC ("Cassel Salpeter") for their violations of Sections 14(a) and/or 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 ("Rule 14a-9"), in connection with the proposed merger between American DG Energy and Tecogen.  Plaintiff also asserts claims for breaches of fiduciary duty against the Director/Officer

Defendants and George N. Hatsopoulos, the brother of John Hatsopoulos who beneficially owns more than 21% of Tecogen and 19% of American DG Energy, and claims for aiding and abetting against George N. Hatsopoulos, Tecogen, Merger Sub, and Cassel Salpeter.

2.      On November 2, 2016, American DG Energy announced that it had entered into an Agreement and Plan of Merger ("Merger Agreement"), pursuant to which Merger Sub will merge with and into American DG Energy, with American DG Energy continuing as the surviving corporation and as a wholly owned subsidiary of Tecogen (the "Proposed Transaction").

3.      Pursuant to the terms of the Merger Agreement, American DG Energy shareholders will receive 0.092 shares of Tecogen common stock for each share of American DG Energy common stock that they own (the "Exchange Ratio").  Based on the $4.03 closing price of Tecogen common stock on November 1, 2016, the last trading day before public announcement of the Proposed Transaction, the Exchange Ratio represents approximately $0.37 in Tecogen common stock for each share of American DG Energy common stock, which is significantly below the Company's 52-week trading high of $0.65.

4.      The Exchange Ratio is also at the very bottom of the implied exchange ratio range calculated by Tecogen's financial advisor (0.092-0.1235), which shows American DG Energy shareholders should be receiving much more in consideration for their shares.

5.      Simply put, the Exchange Ratio is insufficient and undervalues the Company. Furthermore, upon the closing of the Proposed Transaction, Tecogen shareholders are expected to own approximately 81% of the combined company, while American DG Energy shareholders are only expected to beneficially own approximately 19% of the combined company.  Plaintiff and the Class will therefore have their equity stake and voting power severely diluted if the Proposed Transaction is consummated.

6.     The Proposed Transaction is the result of a flawed and conflicted sales process, during which the Director/Officer Defendants and American DG Energy's senior management agreed to sell the Company to Tecogen despite glaring conflicts of interest, and without reaching out to a single other party about a strategic transaction.

7.     Among other significant conflicts of interest: American DG Energy's Co-Chief Executive Officers, John Hatsopoulos and Benjamin Locke, both also serve as the Co-Chief Executive Officers of Tecogen; George N. Hatsopoulos was the Chairman of the American DG Energy Board from the Company's organization in July 2001 until April 2, 2012, is currently a technical advisor to the Company, and served as a director of Tecogen from 2000 through June 27, 2014; Director/Officer Defendant Charles T. Maxwell, the Chairman of the American DG Energy Board, also serves as a director of Tecogen; and  Bonnie Brown, American DG Energy's Chief Financial Officer, is the former Chief Financial Officer of Tecogen, and was instrumental in successfully taking Tecogen public.

8.     John Hatsopoulos and George Hatsopoulos are controlling shareholders of American DG Energy, and used their power and influence over American DG Energy management and the Board to facilitate the Proposed Transaction with Tecogen, a company for which John Hatsopoulos also serves as Co-CEO and in which both men collectively hold a significant equity stake.  Accordingly, the Proposed Transaction is subject to the exacting entire fairness standard of review, which requires Defendants to establish both that the Proposed Transaction was the product of fair dealing and that it resulted in a fair price.  As set forth below, Defendants cannot establish either, because the Proposed Transaction is the product of a conflicted sales process and the Exchange Ratio is grossly insufficient.

9.     As described below, both the value to American DG Energy shareholders

contemplated in the Proposed Transaction and the process by which Defendants agreed to the Proposed Transaction are fundamentally unfair to Plaintiff and the other public shareholders of the Company. The Director/Officer Defendants' conduct constitutes a breach of their fiduciary duties owed to American DG Energy's public shareholders, and a violation of applicable legal standards governing the Director/Officer Defendants' conduct.

10.     On December 21, 2016, in order to convince American DG Energy's unaffiliated shareholders to vote in favor of the Proposed Transaction, Defendants authorized the dissemination of a materially incomplete and misleading Form S-4 Registration Statement, which contains a joint proxy statement/prospectus, and on January 30, 2017, Defendants filed Amendment No. 1 to the Registration Statement (collectively, the "Registration Statement"). The Registration Statement omits material information that renders certain statements therein materially incomplete and misleading, in violation of Sections 14(a) and 20(a) of the Exchange Act. In particular, the Registration Statement contains materially incomplete and misleading information concerning: (i) the valuation analyses performed by American DG Energy's financial advisor, Cassel Salpeter, in support of its so-called "fairness opinion," which were manipulated downward to enable Cassel Salpeter to rubber-stamp the deal; (ii) critical financial projections for American DG Energy and Tecogen; and (iii) information concerning the conflicts of interest that permeated the sales process.

11.     The special meeting of American DG Energy shareholders to vote on the Proposed Transaction is forthcoming. It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's shareholders prior to the forthcoming shareholder vote so that they can properly exercise their corporate suffrage rights.

12.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, or, in the event the

Proposed Transaction is consummated, to recover damages resulting from Defendants' violations of their fiduciary duties of loyalty, good faith, due care and candor and/or their violations of the Exchange Act.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

14.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as such claims relate to Plaintiff's federal claims and form part of the same case or controversy under Article III of the United States Constitution.

15.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual or entity who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) American DG Energy and Tecogen maintain their primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District; and (v) Plaintiff resides in this District.

## PARTIES AND RELEVANT NON-PARTIES

17.     Plaintiff is, and at all relevant times has been, a shareholder of American DG Energy.

18.     Defendant American DG Energy is a Delaware corporation that maintains its principal executive offices at 45 First Avenue, Waltham, Massachusetts.  The Company distributes and operates on-site cogeneration systems that produce both electricity and heat.  The Company also distributes and operates natural gas powered cooling systems.

19.     Defendant Tecogen is a Delaware corporation that maintains its principal executive offices at 45 First Avenue, Waltham, Massachusetts.  Tecogen designs, manufactures and sells industrial and commercial cogeneration systems.

20.     Defendant Merger Sub is a Delaware corporation and a wholly owned subsidiary of Tecogen.  Merger Sub was established for purposes of effectuating the Proposed Transaction.

21.     Defendant Cassel Salpeter is a Florida limited liability company headquartered in Miami, Florida.  Cassel Salpeter provides companies with a broad spectrum of investment banking and financial advisory services.

22.     Director/Officer Defendant John Hatsopoulos has been the Chief Executive Officer of American DG Energy since its inception in 2000.  He is also Co-Chief Executive Officer of Tecogen, and thus stands on both sides of the Proposed Transaction.  As of the date the Merger Agreement was signed, John Hatsopoulos together with his family, including his brother George Hatsopoulos, beneficially owned more than 22% of Tecogen and 20% of American DG Energy. John Hatsopoulos together with his brother George Hatsopoulos are therefore controlling shareholders of American DG Energy.

23.     Director/Officer Defendant Benjamin Locke is Co-Chief Executive Officer of American DG Energy.   He is also Co-Chief Executive Officer of Tecogen.   Prior to joining American DG Energy, Mr. Locke served as the General Manager for Tecogen.   In 2014 Mr. Locke's salary was paid by Tecogen but a portion was reimbursed by American DG Energy.

24.     Director/Officer Defendant Charles T. Maxwell has been the Chairman of the American DG Energy Board since April 2, 2012, and has been a member of the Board since 2001. He is also a member of the board of directors of Tecogen.   Mr. Maxwell beneficially owns approximately 1% of Tecogen and 2% of ADGE.

25.     Director/Officer Defendant Deanna M. Petersen has been a member of the American DG Energy Board since 2010.   Ms. Petersen was also a member of the Special Committee of the American DG Energy Board that was charged with advising the Board with respect to a merger with Tecogen (the "Special Committee").

26.     Director/Officer Defendant Christine M. Klaskin has been a member of the American DG Energy Board since 2012.   Ms. Klaskin was also a member of the Special Committee.

27.     Director/Officer Defendant John Rowe has been a member of the American DG Energy Board since 2013.  Mr. Rowe was also a member of the Special Committee.

28.     Director/Officer Defendant Joan Giacinti is, and has been at all relevant times, a member of the American DG Energy Board.

29.     Director/Officer Defendant Elias Samaras is, and has been at all relevant times, a member of the American DG Energy Board.  He is also the Chief Executive Officer of EuroSite Power Inc. ("EuroSite Power"), a subsidiary of American DG Energy.  Mr. Samaras was nominated to the Board by John Hatsopoulos and was identified through his former business

relationship with the brother of John Hatsopoulos, George Hatsopoulos, who is a former director the Company.  As of April 28, 2016, Mr. Elias owned approximately 4.6% of the Company's outstanding common shares.  Given his relationship and loyalties to John Hatsopoulos, Mr. Elias will undoubtedly vote his shares in favor of the Proposed Transaction.

30.     Defendant George N. Hatsopoulos was the Chairman of the American DG Energy Board from the organization of the Company in July 2001 until April 2, 2012, and he is currently a technical advisor to the Company.   He is the brother of Director/Officer Defendant John Hatsopoulos.  He was a director of Tecogen from 2000 through June 27, 2014.  As of the date the Merger Agreement was signed, George Hatsopoulos together with his family beneficially owned more than 21% of Tecogen and 19% of American DG Energy.  As such, George Hatsopoulos, together with his brother John Hatsopoulos, constituted a control group and controlled the American DG Energy Board and Special Committee and influenced and controlled all significant affairs and decisions of the Company.

31.     As of the date the Merger Agreement was signed, Director/Officer Defendant John Hatsopoulos and his brother George Hatsopoulos, together with their families, beneficially owned a significant portion of the Company's outstanding shares of common stock.  As a result, John Hatsopoulos, individually and/or in concert with his brother George Hatsopoulos, had the ability to control various corporate decisions, including the Company's direction and policies, the election of directors, the content of the Company's charter and bylaws and the outcome of any other matter requiring shareholder approval, including a merger, consolidation and sale of substantially all of the Company's assets or other change of control transaction.

32.     Non-party Robert Panora is the President and Chief Operation Officer of Tecogen and General Manager of American DG Energy.

33.     Non-party Bonnie Brown is Chief Financial Officer of American DG Energy.  She is also Chief Financial Officer of EuroSite Power.  Prior to joining American DG Energy, Ms. Brown served as the Chief Financial Officer for Tecogen and was instrumental in successfully taking Tecogen public.

## CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of American DG Energy (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

35.     This action is properly maintainable as a class action because:

a.     The Class is so numerous that joinder of all members is impracticable.  As of November 14, 2016, there were approximately 50.68 million shares of American DG Energy common stock outstanding, held by hundreds or thousands of individuals and entities scattered throughout the country.  The actual number of public shareholders of American DG Energy will be ascertained through discovery;

b.     There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i)     whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Registration Statement in violation of Section 14(a) of the Exchange Act;

      ii)      whether the Director/Officer Defendants have violated Section 20(a) of the Exchange Act;

      iii)      whether the Director/Officer Defendants have breached their fiduciary duties as officers and directors of the Company in connection with the Proposed Transaction;

      iv)      Whether Defendants John Hatsopoulos and George Hatsopoulos have breached their fiduciary duties in their capacity as controlling shareholders of the Company;

      v)      Whether George Hatsopoulos, Tecogen, Merger Sub, and Cassel Salpeter aided and abetted the Director/Officer Defendants' breaches of fiduciary duty;

      vi)      whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading Registration Statement; and

      vii)      whether Plaintiff and other members of the Class will suffer damages if the Proposed Transaction is consummated on the terms currently contemplated.

c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.      A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

**THE DIRECTOR/OFFICER DEFENDANTS' FIDUCIARY DUTIES**

36.      By reason of the Director/Officer Defendants' positions as directors and/or officers of American DG Energy, said individuals are in a fiduciary relationship with Plaintiff and the other public shareholders of American DG Energy and owed Plaintiff and the other members of the Class the duties of care, loyalty, good faith and candor.

37.      By virtue of their positions as directors and/or officers of American DG Energy, the Director/Officer Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause American DG Energy to engage in the practices complained of herein.

38.      Each of the Director/Officer Defendants was required to act in good faith, in the best interests of the Company's shareholders and with such care, including reasonable inquiry, as would be expected of an ordinarily prudent person.  In a situation where the directors of a publicly traded company undertake a transaction that may result in a change in corporate control, the directors must take all steps reasonably necessary to maximize the value shareholders will receive

or obtain a reasonable premium.  To diligently comply with this duty, the directors of a corporation may not take any action that:

    a.  adversely affects the value provided to the corporation's shareholders;

    b.  contractually prohibits them from complying with or carrying out their fiduciary duties;

    c.  discourages or inhibits alternative offers to purchase control of the corporation or its assets;

    d.  will otherwise adversely affect their duty to search for and secure the best value reasonably available under the circumstances for the corporation's shareholders; or

    e.  will provide the directors and/or officers with preferential treatment at the expense of, or separate from, the public shareholders.

39.     Plaintiff alleges herein that the Director/Officer Defendants, separately and together, in connection with the Proposed Transaction, violated duties owed to Plaintiff and the other public shareholders of American DG Energy, including their duties of loyalty, good faith, care and candor insofar as they, *inter alia*: failed to obtain the best price or exchange ratio possible or a reasonable premium under the circumstances before entering into the Merger Agreement; engaged in self-dealing and obtained for themselves personal benefits, including personal financial benefits, not shared equally by Plaintiff or the other holders of American DG Energy common stock; and caused a materially incomplete and misleading Registration Statement to be disseminated to the Company's shareholders, which will deprive the Company's shareholders of the ability to make an informed decision concerning whether or not to vote in favor of the Proposed Transaction.

40.     Further, John Hatsopoulos and George Hatsopoulos, by virtue of: (i) their collective beneficial ownership of more than 20% of ADGE and 22% of Tecogen; (ii) close familial

relationship; (iii) roles as officers, directors and/or advisors to American DG Energy and/or Tecogen; and (iv) longstanding relationships with the other Director/Officer Defendants, acted as a control group and had the ability to control various corporate decisions of American DG Energy, including direction and policies, the election of directors, the content of charter and bylaws and the outcome of any other matter requiring shareholder approval, including a merger, consolidation and sale of substantially all of assets or other change of control transaction.  An ultimate human controller who engages directly or indirectly in an interested transaction with a corporation is liable for breach of fiduciary duty, even if other corporate actors made the formal decision on behalf of the corporation, and even if the controller participated in the transaction through intervening entities  As such, John Hatsopoulos and George Hatsopoulos, acting as a control group, owed fiduciary duties of care, loyalty, good faith and candor to the Company's unaffiliated shareholders.

## SUBSTANTIVE ALLEGATIONS

I.     **The Exchange Ratio is the Result of a Conflicted Sales Process and Fails to Adequately Compensate Plaintiff and the Class for Their Shares**

41.     American DG Energy was incorporated in 2001 and is headquartered in Waltham, Massachusetts.  The Company owns, operates, maintains, and distributes on-site energy systems that produce electricity, hot water, heat, and cooling energy at customers' facilities in the United States and the United Kingdom.  The Company owns and installs equipment at customers' facilities, and sells the energy produced by these systems to customers on a long-term contractual basis.  It offers natural gas powered co-generation systems, which produce electricity from an internal combustion engine driving a generator, while the heat from the engine and exhaust is recovered and used to produce heat and hot water for use at the site, as well as natural gas heat pumps and complementary energy equipment.  The Company also distributes and operates water chiller systems for building cooling applications.  It offers standardized packages of energy,

equipment, and services to meet the needs of property owners and operators in healthcare, hospitality, residential, athletic facilities, and various industrial sites directly.

42. The Exchange Ratio American DG Energy shareholders stand to receive if the Proposed Transaction is consummated fails to adequately compensate them for their shares. Based on the $4.04 closing price of Tecogen common stock on November 1, 2016, American DG Energy shareholders are being offered approximately $0.37 per share, which is significantly below the Company's 52-week trading high of $0.65.

43. The Exchange Ratio is also at the very bottom of the implied exchange ratio range calculated by Tecogen's financial advisor in connection with its Discounted Cash Flow ("DCF") Analysis (0.092-0.1235), which shows American DG Energy shareholders should be receiving much more in consideration for their shares. That same analysis shows American DG Energy's shares are worth as much as $0.51 per share.

44. The Exchange Ratio is also inadequate in light of strategic steps American DG Energy took to reduce its debt in the months preceding the announcement of the Proposed Transaction.

45. Specifically, on May 4, 2016, the Company announced the execution of a series of transactions that strengthened the Company's balance sheet through the elimination of a portion of the Company's outstanding convertible debt. In addition, these steps removed any potential shareholder dilution that may have resulted from a debt to equity conversion of the securities. In total, the transactions eliminated $9.3 million in convertible debentures ($8.5 million net of prepaid interest). Upon the announcement of the transactions, the Company's stock price soared from $0.24 to $0.41, an increase of approximately 70%.

46.     Further, on May 13, 2016, the Company announced its first quarter financial results, which showed consolidated EBITDA cash flows improved by $511,706, reaching a positive "inflow" of $81,171 in the first quarter of 2016, versus an outflow of $430,535 for the same period in 2015.

47.     On August 10, 2016, the Company announced the execution of binding agreements that will further reduce its convertible debt outstanding.  Via a series of related transactions, convertible debt outstanding will be reduced to just $3.4 million, down significantly from the $17.7 million in debt principal outstanding at year end 2015.  Upon the announcement of the planned further reduction in the Company's convertible debt, its stock price jumped.  On October 4, 2016, the Company announced that it had completed the debt swap transactions ahead of schedule.

48.     Additionally, on August 11, 2016, the Company announced its second quarter 2016 financial results.  Highlights included: revenues increased to $2,112,148 for the second quarter of 2016 compared to $2,087,127 for the same period in 2015, an increase of $25,021 or 1.2%; non-GAAP EBITDA cash flows for US operations improved by $230,631, reaching a positive "inflow" of $81,058 in the second quarter of 2016, versus an "outflow" of $149,573 for the same period in 2015; overall operating expenses decreased to $553,490 for the second quarter of 2016 versus $888,008 for the same period in 2015, a 37.7% improvement, generating an expense reduction of $334,518; and gross margin excluding depreciation improved to 39.7% for the second quarter of 2016 compared to 38.1% for the same period in 2015, a gross margin improvement of 1.6%.

49.     In other words, the Company has taken significant steps to reduce its debt in recent months, causing its stock price to increase significantly.  Further, the Company's financial results have improved significantly, resulting in positive cash flow inflows over the past two quarters, as compared to significant outflows during the same period the previous year.  The Exchange Ratio

fails to adequately compensate American DG Energy shareholders in light of these developments, as the Company's shares are worth at least $0.51.

50.     The inadequate Exchange Ratio is the result of a flawed sales process, during which neither the Director/Officer Defendants nor the Special Committee considered a single strategic alternative besides a merger with Tecogen.  Indeed, the Special Committee was tasked solely with "advising" the Board with respect to a merger with Tecogen, and was not authorized to solicit or pursue alternative transactions with other parties.

51.     The Special Committee failed to engage in any sort of meaningful negotiations with Tecogen to procure a fair Exchange Ratio.  On September 16, 2016, Tecogen made its initial offer to acquire American DG Energy for $0.30 per share in Tecogen stock, $.02 less than the closing price of American DG Energy the previous day.  On October 31, 2016, the Special Committee countered with its *only* disclosed counterproposal, an exchange ratio of 0.092, and the deal was finalized on November 1, 2016.  The pace of the deal and the lack of real negotiations is telling and exemplifies that the Proposed Transaction was a fait accompli from the moment it was proposed.

52.     The Special Committee and Director/Officer Defendants further failed to fulfill their fiduciary duties by failing to ensure that the Proposed Transaction could only be consummated if a majority of the shares held by the Company's unaffiliated shareholders voted in favor of the deal.  Instead, the Merger Agreement only requires the affirmative vote of a majority of all the outstanding shares of American DG Energy common stock. Defendants have failed to protect unaffiliated shareholders.  At the close of business on the record date, the Director/Officer Defendants and their affiliates held and were entitled to vote 9,139,239 shares of American DG Energy common stock, collectively representing 18.03% of the shares of American DG Energy

common stock issued and outstanding and entitled to vote on that date. The Director/Officer Defendants have indicated that they expect to vote for the Proposed Transaction, meaning that significantly less than half of the remaining outstanding shares need to vote in favor of the Proposed Transaction for it to be approved.

53.     Moreover, George Hatsopoulos and John Hatsopoulos beneficially own more than 22% of Tecogen and 20% of American DG Energy, and are certainly going to vote in favor of the Proposed Transaction.

54.     In sum, the Exchange Ratio fails to adequately compensate American DG Energy shareholders, and is the result of a flawed sales process during which Company management and the Director/Officer Defendants failed to conduct a sufficient and robust review of strategic alternatives and quickly rubber-stamped a deal with Tecogen, which was the only transaction Director/Officer Defendant John Hatsopoulos desired and would permit to go forward.

II.     **John Hatsopoulos and George Hatsopoulos are Controlling Shareholders of American DG Energy and Stand on Both Sides of the Proposed Transaction, Triggering Entire Fairness Review**

55.     Director/Officer Defendant John Hatsopoulos, together with his brother George Hatsopoulos, are controlling shareholders of American DG Energy and exercise significant control over the Company.

56.     As of the date the Merger Agreement was signed, John Hatsopoulos and George Hatsopoulos beneficially owned more than 22% of Tecogen and 20% of American DG Energy.

57.     Further, as set forth in the Company's most recent annual report: "George N. Hatsopoulos and John Hatsopoulos, who are brothers, together with their families, beneficially own a large portion of our outstanding shares of common stock. These shareholders, with a small group of other major shareholders, have the ability to control various corporate decisions,

including our direction and policies, the election of directors, the content of our charter and bylaws and the outcome of any other matter requiring shareholder approval, including a merger, consolidation and sale of substantially all of our assets or other change of control transaction. The concurrence of our minority shareholders will not be required for any of these decisions."

58.     John Hatsopoulos' and George Hatsopoulos' control over the election of the Company's directors makes all of the Director/Officer Defendants, including the three Director/Officer Defendants who served on the Special Committee, beholden to them for their lucrative directorships. The Special Committee therefore did not function as truly independent from John Hatsopoulos.

59.     Further, John Hatsopoulos has had extensive business dealings with the Company and its affiliated entities in recent years.

60.     On May 23, 2011, the Company issued $12,500,000 aggregate principal amount of debentures, or the 2018 Debentures, to RBC cees Nominees Limited, the beneficial owner of 16.3% of the Company's common stock, and to John Hatsopoulos. The 2018 Debentures mature on May 25, 2018 and accrue interest at the rate of 6.0% per annum payable on a semi-annual basis. At each holder's option, the debentures are convertible into shares of the Company's common stock. The Company has the option to redeem at 115% of Par Value any or all of the debentures after May 25, 2016. The proceeds of the debentures were used in connection with the development and installation of energy systems, business development and for general corporate purposes.

61.     Effective April 15, 2014 and April 24, 2014, EuroSite Power entered into subscription agreements with John Hatsopoulos for the sale of a $1,450,000, 4% Senior Convertible Note Due 2018.

62.     On September 19, 2014, John Hatsopoulos loaned EuroSite Power $3,000,000

without interest pursuant to a promissory note (the "Loan").  The Loan matures upon a substantial capital raise or on September 19, 2019.  Prepayment of principal may be made at any time without penalty.  The proceeds of the Loan were to be used in connection with the development and installation of current and new energy systems in the United Kingdom and Europe.  On December 30, 2014, EuroSite Power amended and restated the existing promissory note to provide for interest at a rate of 1.85%.  During 2015, EuroSite made a prepayment of $1,000,000 on this note.  As of December 31, 2015, the outstanding balance on this Loan was $2,000,000.

63.     On October 3, 2014, the Company entered into a convertible note amendment agreement, or the Note Amendment Agreement, with EuroSite, John Hatsopoulos, and certain European investors.  In part, the Note Amendment Agreement provided that the holders of the Company's existing 6% Senior Unsecured Convertible Debentures Due 2018, originally issued in part on May 23, 2011 and in part on November 25, 2011, in an aggregate principal amount of $19,400,000, or the Old Debentures, could exchange the Old Debentures for like principal amounts of 6% Senior Unsecured Convertible Debentures Due 2018, amended to reflect the prepayment to the Holders of all accrued and future interest under the Old Debentures in shares of common stock of EuroSite, which the Company then owned at a conversion price of $.50 per share, or the New Debentures.

64.     Pursuant to the Note Amendment Agreement and in connection with the payment of the interest currently due on the Old Debentures, the Company issued to the Holders warrants to purchase up to 1,164,000 shares of common stock of EuroSite owned by the Company, or the Warrants, at an exercise price of $.60 per share and an expiration date of October 3, 2017.  Included among the Holders are (i) John Hatsopoulos, who was issued a New Debenture in the principal amount of $2,400,000, Warrants to purchase up to 144,000 shares of common stock of EuroSite

owned by the Company, and 1,164,000 shares of EuroSite common stock and (ii) a European investor, which was issued New Debentures in the principal amounts of $10,100,000 and $6,900,000, Warrants to purchase up to 1,020,000 shares of common stock of EuroSite owned by the Company and 8,245,000 shares of EuroSite common stock.

65.     In sum, Director/Officer Defendant John Hatsopoulos has personally engaged in numerous significant transactions with American DG Energy and its affiliated entities in recent years, which further exemplifies the control he maintains over the Company.

66.     John Hatsopoulos has also used his power and control over American DG Energy and Tecogen to force both companies to enter into overlapping contracts and business relationships.

67.     On August 7, 2015, American DG Energy entered into a Facilities, Support Services and Business Agreement with Tecogen (the "Facilities Agreement").  The Facilities Agreement replaced and amended version of the Facilities and Support Service Agreement, dated as of January 1, 2006, with American DG Energy.  The Facilities Agreement provides that, in exchange for agreed upon fees, Tecogen will provide American DG Energy with, among other things; (1) certain office space; (2) certain business support services; (3) certain rights to purchase cogeneration products directly from Tecogen at a discounted price; (4) certain rights to purchase Tecogen services at a discounted price; (5) certain rights that allow American DG Energy to purchase Tecogen products from Tecogen sales representatives; and (6) the right to certain royalty fees.  Absent required notice, the Facilities Agreement will automatically renew for one-month periods. Under this agreement, American DG Energy leases approximately 2,400 square feet of office space from Tecogen.  Under the terms of the Facilities Agreement American DG Energy pays Tecogen a monthly fee $5,122 per month.

68.     Tecogen is also the primary supplier of co-generation equipment and co-generation maintenance services to American DG Energy.  Tecogen's revenue from sales of co-generation parts and service to American DG Energy during the years ended December 31, 2015 and 2014 amounted to $1,903,427 and $1,410,639, respectively.

69.     In sum, John Hatsopoulos and George Hatsopoulos are controlling shareholders of American DG Energy, have used their positions of power and influence to enter into personal agreements with the Company, and have successfully forced their will upon both companies' boards of directors in order to push through approval of the Proposed Transaction.

### III.     The Materially Incomplete and Misleading Registration Statement

70.     On January 30, 2017, Defendants caused the Registration Statement to be filed the with the SEC in connection with the Proposed Transaction.  The Registration Statement has therefore been disseminated to the Company's shareholders.  The Registration Statement solicits the Company's shareholders to vote in favor of the Proposed Transaction.  The Director/Officer Defendants, Tecogen, and Cassel Salpeter were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

71.     With respect to Cassel Salpeter's DCF Analysis (Registration Statement 49-50), the Registration Statement fails to disclose the ADGE NOLs[1], ADGE Estimated NOL Tax Savings,

---

[1] A net operating loss ("NOL") is a loss taken in a period where a company's allowable tax deductions are greater than its taxable income.  When more expenses than revenues are incurred

Tecogen NOLs, Tecogen Estimated NOL Tax Savings, and Ultratek Pricing Information[2] that were used in the analysis (collectively, the "Omitted Inputs")[3]. The Omitted Inputs were prepared by American DG Energy and Tecogen management for their respective companies and provided to Cassel Salpeter and the Director/Officer Defendants.

72.     Significantly, Tecogen's financial advisor, Scarsdale Equities LLC, did not utilize the Omitted Inputs in connection with its own DCF Analysis, and arrived at an implied exchange ratio of 0.092 to 0.1235 share of Tecogen common stock for each share of American DG Energy common stock, and an implied valuation range of $0.38 to $0.51 per American DG Energy share. Registration Statement 45. In other words, Tecogen's financial advisor performed a DCF Analysis showing that the proposed Exchange Ratio was at the bottom of the appropriate exchange ratio range for American DG Energy's shares, and that Tecogen is getting a steal at the proposed 0.092 Exchange Ratio.

73.     American DG Energy's financial advisor, Cassel Salpeter, could not issue a fairness opinion if it arrived at the same implied exchange ratio in connection with its own DCF Analysis, so it needed to come up with a way to change the inputs to make the proposed Exchange Ratio fall within the implied exchange ratio it calculated. In order to do so, Cassel Salpeter utilized different

---

during the period, the net operating loss for the company can generally be used to recover past tax payments.
[2] Ultratek refers to Tecogen's interest in a joint venture with Ultra Emissions Technologies Inc. for the years ending December 21, 2016 through December 31, 2018. The Ultratek Pricing Information refers to pricing information for a recent equity financing effected by Ultratek that was prepared by the management of Tecogen.
[3] The "ADGE NOLs" refer to estimates of ADGE's net operating loss tax carryforwards prepared by management of ADGE; the "ADGE Estimated NOL Tax Savings" refer to the potential tax savings available to ADGE based on the ADGE NOLs, as calculated by ADGE management; the "Tecogen NOLs" refer to estimates of Tecogen's net operating loss tax carryforwards prepared by management of Tecogen; the "Tecogen Estimated NOL Tax Savings" refer to the potential tax savings available to Tecogen based on Tecogen NOLs, as calculated by Tecogen management.

financial metrics and inputs in connection with its own DCF Analysis (the Omitted Inputs), *none of which are disclosed*, and magically determined that the appropriate exchange ratio was somewhere between 0.0719 and 0.0942, significantly below the exchange ratio arrived at by Tecogen's financial advisor in its own DCF analysis.

74.    The Omitted Inputs are material to American DG Energy shareholders, and necessary for them to assess the validity of Cassel Salpeter's valuation analyses and resulting fairness opinion, and to determine how much weight, if any, to give to them.

75.    As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions:

> **[C]urrent fairness opinion practice is still deeply flawed. Fairness opinions, and their underlying valuation analyses, are prone to subjectivity and are frequently prepared utilizing methodologies that simply do not jibe with best practices. These defects are exacerbated by the recurring problem of investment banks who are conflicted in their provision of fairness opinions.**

Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1562 (2006).

76.    Professor Davidoff hones in on precisely why shareholders should not rely solely on a banker's valuation analyses, and why management's underlying inputs are critical - namely, because bankers take management's inputs and then make various highly subjective decisions to arrive at a share valuation.  For example, in a DCF analysis, Professor Davidoff explains that a banker takes management's forecasts, and then makes several key choices "**each of which can significantly affect the final valuation**." *Id*. at 1576.

77.    And as Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value.  For example, a change in the discount rate by one percent on a stream of

cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.

**This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion <u>unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices</u>**. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78.

78.     The above-referenced Omitted Inputs are material to American DG Energy shareholders because they are necessary for shareholders to assess the legitimacy of Cassel Salpeter's DCF Analysis and observe and appreciate the flaws in the analysis and to assess the reliability of the DCF analysis as a measure of the Company's intrinsic value.  The omission of the Omitted Inputs renders the implied exchange ratio reference range of 0.0719x to 0.0942 on page 50 of the Registration Statement, and the repeated statements that the Exchange Ratio is "fair" to American DG Energy's unaffiliated shareholders, misleading.   Furthermore, without the Omitted Inputs, the Company's shareholders are unable to make any meaningful determination whether that range reflects the Company's true value or was the result of Cassel Salpeter's unreasonable judgment and intentional manipulation.

79.     The Director/Officer Defendants and Cassel Salpeter know the Exchange Ratio is not actually "fair" to American DG Energy's shareholders, based upon the valuation analyses performed by Tecogen's financial advisor which show the exchange ratio should be significantly higher, and based upon the clear indicia of intentional downward manipulation in Cassel Salpeter's valuation analyses.

80.     Cassel Salpeter's manipulation of its valuation analyses to keep the implied exchange ratio reference ranges it calculated low is also exemplified by its Selected Companies Analysis.   Specifically, while the mean and median Enterprise Value ("EV") to Last Twelve Months ("LTM") Revenue multiples it calculated were 5.69x and 6.42x, respectively, Cassel Salpeter applied *significantly lower* multiples of 2.50x to 3.00x to American DG Energy's LTM Revenue.   Registration Statement 52.   Cassel Salpeter did the same thing with respect to the EV/ 2016 Revenue and EV/2017 Revenue multiples.   *Id.*   In other words, Cassel Salpeter applied unreasonably low multiples in order to drive down the implied value of American DG Energy, which it needed to do in order to render its fairness opinion.

81.     Defendants have also failed to disclose "the unlevered free cash flows that Tecogen management expects ADGE to generate during fiscal years 2017 through 2020" (Registration Statement 47), as well as the cash flows for American DG Energy that Cassel Salpeter utilized in connection with its DCF Analysis. *Id.* at 51.   Under sound corporate finance theory, American DG Energy shareholders would find projections of the Company's cash flows material in assessing the fairness of the Exchange Ratio.   The omission of such projections renders the projections set forth on pages 55-56 of the Registration Statement materially incomplete and misleading.

82.     Indeed, financial experts agree that projections for Adjusted EBITDA, which are include in the Registration Statement, are not a sufficient substitute for cash flow projections when attempting to understand the value of a company.   As Warren Buffet and other financial experts have stated: "References to EBITDA make us shudder.   Too many investors focus on earnings

before interest, taxes, depreciation and amortization.  That makes sense, only if you think capital expenditures are funded by the tooth fairy."[4]

83.    Relying solely on Adjusted EBITDA to provide a fair summary of a company's financial prospects has numerous pitfalls.  Adjusted EBITDA does not take into account any capital expenditures, working capital requirements, current debt payments, taxes, or other fixed costs which are critical to understand a company's value.  As a result of these material differences between EBITDA and unlevered free cash flow, many analysts recognize unlevered free cash flow as a much more accurate measure when it comes to analyzing the expected performance of a company.  Disclosing Adjusted EBITDA projections without cash flow projections is therefore inherently misleading.

84.    Defendants have also failed to disclose: (i) the number of vested and unvested American DG Energy options owned; (ii) ADGE option exercise price; (iii) number of vested Tecogen options received in exchange for ADGE options upon completion of the Proposed Transaction; and (iv) exercise price of Tecogen options received in exchange for ADGE options upon completion of the merger for Director/Officer Defendants John Hatsopoulos and Joan Giacinti, as well as non-party George Hatsopoulos.  Registration Statement 58.  Such information is provided for each of the other Director/Officer Defendants, but not for John Hatsopoulos, Joan Giacinti and George Hatsopoulos.  The Director/Officer Defendants' restricted stock awards and options will be converted into the right to receive the merger consideration *regardless of whether the options are vested or unvested*.  The omitted information is material to American DG Energy shareholders, as it is imperative that they fully understand the financial motivations to consummate

---

[4]    Elizabeth    MacDonald,    *The    Ebitda    folly*,    FORBES    (March    17,    2003), http://www.forbes.com/global/2003/0317/024.html.

the Proposed Transaction that *each* of the Director/Officer Defendants and George Hatsopoulos have that are "different from" theirs. *Id*. The omission of such information renders the generic description of the treatment of the Director/Officer Defendants' equity awards on page 58 of the Registration Statement incomplete and misleading, as shareholders are unable to properly quantify and assess the significance of *each* Defendant's conflict of interest.

85. Lastly, Defendants have deceptively omitted the reference to George Hatsopoulos' ownership stakes in Tecogen and ADGE in the Amended Registration Statement in order to create the illusion that the Proposed Transaction was not plagued by a significant conflict of interest. Specifically, while the original Registration Statement at page 39 stated that "John Hatsopoulos together with his family beneficially owns more than 22% of Tecogen and 20% of ADGE" and that "George Hatsopoulos together with his family beneficially owns more than 21% of Tecogen and 19% of ADGE," the Amended Registration Statement at page 39 only references John Hatsopoulos' individual holdings in Tecogen and ADGE. The omission of the percentage of stock George Hatsopoulos owns in both Tecogen and ADGE renders the Amended Registration Statement section regarding "ownership overlap" incomplete and misleading.

86. In sum, Defendants have omitted material information from the Registration Statement, which renders statements therein materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against American DG Energy, the Director/Officer Defendants, Tecogen, Merger Sub, and Cassel Salpeter for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

87.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

88.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

89.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that solicitation communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

90.     Defendants have issued the Registration Statement with the intention of soliciting shareholder support for the Proposed Transaction.   Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, amongst other things: (i) the valuation analyses performed by Cassel Salpeter in support of its so-called "fairness opinion"; (ii) critical financial projections for American DG Energy and Tecogen; and (iii) information concerning the conflicts of interest that permeated the sales process.

91.     In so doing, Defendants omitted material facts necessary to make the statements made not misleading.

92.     Each of the Director/Officer Defendants, by virtue of their roles as officers and/or directors of American DG Energy and/or Tecogen, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) and Rule 14a-9.

93.     Cassel Salpeter was also aware of and had access to the omitted material information identified above, and failed to ensure it was included in the Registration Statement.

94.     Tecogen and Merger Sub were also aware of and had access to the omitted material information identified above, and failed to ensure it was included in the Registration Statement.

95.     These Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

96.     The Director/Officer Defendants were negligent in preparing the Registration Statement and/or authorizing its dissemination.  The Director/Officer Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Registration Statement states that Cassel Salpeter reviewed and discussed its financial analyses with the Director/Officer Defendants, and further states that the Director/Officer Defendants considered the financial analyses provided by Cassel Salpeter as well as its fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Director/Officer Defendants were privy to and had knowledge of the projections for the Company and Tecogen that have been omitted from the Registration Statement.  The Director/Officer Defendants were negligent in failing to

ensure that the material information identified above was included in the Registration Statement. Indeed, the Director/Officer Defendants were required to review the Cassel Salpeter's analyses in connection with their receipt of the fairness opinion, question Cassel Salpeter as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there were no material misstatements or omissions.

97.    The preparation of a Registration Statement by corporate insiders containing materially false or incomplete and misleading statements or omitting material information constitutes negligence.   The Director/Officer Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors and officers.

98.    American DG Energy is also deemed negligent as a result of the Director/Officer Defendants' negligence in preparing and reviewing the Registration Statement.

99.    Cassel Salpeter was also negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do as the Company's financial advisor who provided a fairness opinion and performed valuation analyses that were referenced in the Registration Statement.  Cassel Salpeter was undoubtedly involved in preparing and/or reviewing the sections of the Registration Statement that address actions it took and valuation analyses it performed.  Cassel Salpeter permitted the use of its name to solicit proxies from American DG Energy shareholders.

100.    Tecogen and Merger Sub, via its officers and/or directors, were also negligent in

choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it.  Indeed, certain projections originally prepared by American DG Energy management were modified by Tecogen management to reflect Tecogen management's assessment of ADGE's business and the potential synergies that might be realized in a merger.  Ultimately, unlevered free cash flows that Tecogen management expects ADGE to generate during fiscal years 2017 through 2020 were generated.  Registration Statement 47.  Further, Tecogen provided certain Omitted Inputs to Cassel Salpeter for use in its valuation analyses.  *Id*. at 51.  For the reasons set forth above, such cash flow projections and Omitted Inputs are material to American DG Energy shareholders.  Tecogen and Merger Sub permitted the use of its name to solicit proxies from American DG Energy shareholders.

101.    The misrepresentations and omissions in the Registration Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Director/Officer Defendants for Violations of Section 20(a) of the Exchange Act)

102.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

103.    The Director/Officer Defendants acted as controlling persons of American DG Energy within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of American DG Energy, and participation in and/or

awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

104.    Each of the Director/Officer Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

105.    In particular, each of the Director/Officer Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Registration Statement at issue contains the unanimous recommendation of each of the Director/Officer Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

106.    In addition, as the Registration Statement sets forth at length, and as described herein, the Director/Officer Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Director/Officer Defendants reviewed and considered.  The Director/Officer Defendants participated in drafting and/or gave their input on the content of those descriptions.

107.    By virtue of the foregoing, the Director/Officer Defendants have violated Section 20(a) of the Exchange Act.

108.    As set forth above, the Director/Officer Defendants had the ability to exercise

control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Director/Officer Defendants' conduct, Plaintiff will be irreparably harmed.

109.    Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

### (Against the Director/Officer Defendants for Breaches of Fiduciary Duty)

110.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

111.    The Director/Officer Defendants have violated their fiduciary duties of loyalty, due care, candor and good faith owed to American DG Energy shareholders.

112.    By the acts, transactions, and courses of conduct alleged herein, the Director/Officer Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in American DG Energy.

113.    As demonstrated by the allegations above, the Director/Officer Defendants failed to exercise the care required, and breached their duties of loyalty, due care, good faith and candor owed to American DG Energy shareholders because, among other reasons, they failed to take steps to obtain the highest possible consideration under the circumstances, by, among other things, failing to adequately consider other strategic alternatives and instead favoring their own, or their fellow directors' or executive officers' interests to secure all possible benefits with a friendly suitor, rather than protect the best interests of American DG Energy shareholders.

114.    By reason of the foregoing acts, practices, and courses of conduct, the Director/Officer Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

115.    The Director/Officer Defendants breached their duty of loyalty by agreeing to the Proposed Transaction for inadequate consideration in order to advance their own personal interests rather than the interests of American DG Energy's unaffiliated shareholders.

116.    As a result of the actions of Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive fair consideration for their American DG Energy shares, and have been denied material information concerning the Proposed Transaction that is necessary for them to cast an informed vote on whether or not to approve the deal.

117.    Unless the Court enjoins Defendants, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the members of the Class.

118.    Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

<u>**COUNT IV**</u>
**(Against John Hatsopoulos and George Hatsopoulos for Breaches of Fiduciary Duty in Their Capacity as a Control Group)**

119.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

120.    John Hatsopoulos and George Hatsopoulos, acting in concert and together as a group, are controlling shareholders of American DG Energy, and have violated their fiduciary

duties of loyalty, care, and good faith owed to the public shareholders of the Company by placing their personal interests ahead of the interests of Plaintiff and the Class, and foisting an unfair transaction, both in terms of process and price, upon Plaintiff and the Class.

121.    By the acts, transactions and courses of conduct alleged herein, John Hatsopoulos and George Hatsopoulos are attempting to unfairly deprive Plaintiff and the Class of the true value of their American DG Energy shares.

122.    The Proposed Transaction is unfair to Plaintiff and the Class, and represents an effort by the Defendants to aggrandize the financial position and interests of John Hatsopoulos and George Hatsopoulos, who collectively own significant stakes in Tecogen and/or hold positions with Tecogen.  The Proposed Transaction is an attempt to deny Plaintiff and the Class their right to share proportionately in the true value of the Company, while usurping the same for the benefit of John Hatsopoulos and George Hatsopoulos.

123.    As a result of Defendants' unlawful actions, Plaintiff and the Class will be damaged in that they will not receive fair consideration for their American DG Energy shares.

124.    Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**<u>COUNT V</u>**
**(Against George Hatsopoulos, Tecogen, Merger Sub and Cassel Salpeter for Aiding and Abetting the Director/Officer Defendants' Breaches of Fiduciary Duty)**

125.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

126.    George Hatsopoulos, Tecogen, Merger Sub and Cassel Salpeter have acted and are acting with knowledge of, or with reckless disregard to, the fact that the Director/Officer Defendants have breached their fiduciary duties to American DG Energy shareholders, and have

facilitated and/or participated in such breaches of fiduciary duties.

127.    George Hatsopoulos, Tecogen, Merger Sub and Cassel Salpeter knowingly aided and abetted the Director/Officer Defendants' wrongdoing alleged herein.  In so doing, George Hatsopoulos, Tecogen, Merger Sub and Cassel Salpeter rendered substantial assistance in order to effectuate the Director/Officer Defendants' plan to consummate the Proposed Transaction in breach of their fiduciary duties.

128.    Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.      Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Transaction or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Registration Statement and Defendants agree to restructure the Proposed Transaction to provide additional consideration to Plaintiff and the Class;

C.      Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses;

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 15, 2017

**OF COUNSEL:**


**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde (*pro hac vice* pending)
Miles D. Schreiner (*pro hac vice* pending)
The Empire State Building
350 Fifth Avenue, 59th Floor
New York, NY 10118
Tel: (212) 971-1341
E-mail: jmonteverde@monteverdelaw.com
mschreiner@monteverdelaw.com


**BRODSKY & SMITH, LLC**
Evan J. Smith (*pro hac vice* pending)
Marc L. Ackerman (*pro hac vice* pending)
Two Bala Plaza
Suite 510
Bala Cynwyd, PA 19004
Tel: (610) 667-6200
E-mail: esmith@brodskysmith.com
mackerman@brodskysmith.com

*Attorneys for Plaintiff*

Respectfully submitted,

**BLOCK & LEVITON LLP**

By: /s/ Jason M. Leviton
Jason M. Leviton (BBO 678331)
155 Federal Street, Suite 400
Boston, MA 02110
Tel.: (617) 398-5600
Fax: (617) 507-6020
Jason@blockesq.com

*Attorneys for Plaintiff*