UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LEE VARDAKAS, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 17-cv-10247-LTS |
| AMERICAN DG ENERGY INC., JOHN N. HATSOPOULOS, GEORGE N. HATSOPOULOS, et. al., | ) ) ) ) ) | |
| Defendants. | ) ) | |

ORDER ON MOTION TO DISMISS

March 2, 2018

SOROKIN, J.

This class action case, brought by and on behalf of William Chase May[1] and other similarly situated holders ("the Vardakas class") of the common stock of American DG Energy Inc. ("American DG"), alleges American DG; Tecogen; Tecogen.ADGE Acquisition Corp. ("Merger Sub"); Cassel Salpeter & Co., LLC ("Cassel"); and various individuals[2] violated securities laws and state common law duties all in connection with the merger of American DG and Tecogen. The Defendants filed a joint Motion to Dismiss, Doc. No. 41, and May, on behalf of May and the Vardakas class, opposed, Doc. No. 45.

---

[1] The class action was originally brought by Lee Vardakas. Doc. No. 1. Vardakas and May moved to appoint May as Lead Plaintiff, and thereafter the Court appointed May to be Lead Plaintiff. Doc. Nos. 18; 25. Vardakas remains the named plaintiff in the action. See Doc. No. 34.
[2] The individual defendants are Co-CEOs of American DG and Tecogen John N. Hatsopoulos and Benjamin Locke ("Officer Defendants"); board of director members Charles T. Maxwell, Deanna M. Petersen, Christine Klaskin, John Rowe, Joan Giacinti, Elias Samaras ("Director Defendants"); and George N. Hatsopoulos. See Doc. No. 34 at ¶¶ 24-39.

1

I.      BACKGROUND

On February 15, 2017, Vardakas commenced this class action, essentially alleging the merger between Defendants American DG and Tecogen was the result of a conflicted sales process, which undervalued the common stock of American DG, and that the Defendants disseminated a misleading Form S-4 Registration Statement containing material omissions in order to convince American DG's unaffiliated shareholders to vote in favor of the unfair transaction.

On April 21, 2017, William Chase May and Lee Vardakas jointly moved to appoint May as lead plaintiff in the action, Doc. No. 18, and on May 2, 2017, the Court granted their motion, Doc. No. 25. Thereafter, on June 19, 2017, May filed an amended class action complaint ("the Complaint"), identifying May as the lead plaintiff. Doc. No. 34.

On July 19, 2017, the Defendants filed a motion to dismiss the amended complaint. Doc. No. 41.

II.     THE COMPLAINT'S ALLEGATIONS

The Complaint alleges five counts against Defendants all arising from the proposed (now consummated) merger of American DG and Tecogen. Doc. No. 34. First, the Complaint alleges all Defendants violated Section 14(a) of the Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78n(a), and Rule 14a-9 promulgated thereunder, 17 CFR § 240.14a-9, by preparing, reviewing, and disseminating an incomplete and misleading proxy statement to shareholders (Count I). Doc. No. 34 at ¶¶ 113-25. Second, it alleges the Director and Officer Defendants violated Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), by exercising control over American DG and Tecogen during which time American DG and Tecogen violated the Exchange Act (Count II). Id. at ¶¶ 126-33. Third, it claims that the Director and Officer Defendants, as well as John and

George Hatsopoulos, breached their common law fiduciary duties owed to American DG shareholders by virtue of their positions as directors and officers, and as control group, respectively (Counts III and IV). Id. at ¶¶ 134-41. Finally, the Complaint alleges George Hatsopoulos, Tecogen, and Merger Sub are liable for aiding and abetting the Director and Office Defendants in breaching their common law fiduciary duties (Count V). Id. at ¶¶ 142-145.

III. DISCUSSION

To survive a motion to dismiss, a complaint "must provide fair notice to the defendants" and "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Bruns v. Mayhew, 750 F.3d 61, 71 (1st Cir. 2014) (citation and internal quotation marks omitted); Ashcroft v. Iqbal, 556 U.S. 662, 678 (citation and internal quotation marks omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citation omitted); see also id. at 679 (noting that a complaint must "permit the court to infer more than the mere possibility of misconduct") (citation omitted). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (citation omitted).

    A.    Section 14(a)/Rule 14a-9 Claims

SEC Rule 14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, prohibits solicitation by means of a proxy statement containing "any statement which, at the time and in the light of the circumstances under which it is made . . . omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 CFR § 240.14a-9(a).

3

To prevail on a claim under SEC Rule 14a-9, a plaintiff must show "(1) the proxy statement contained a material misstatement or omission, which (2) caused plaintiff's injury, and (3) that the proxy solicitation . . . was an essential link in the accomplishment of the transaction." In re JP Morgan Chase Secs. Litig., 363 F. Supp. 2d 595, 636 (S.D.N.Y. 2005).

"An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976). "It does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote . . . [but just that it] would have assumed actual significance in the deliberations of a reasonable shareholder . . . [i.e.,] would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." Id. "The 'total mix' of information available to a shareholder may include information outside of the proxy statement itself where, given the particular solicitation, a reasonable investor would be likely to consider such outside information." Kaplan v. First Hartford Corp., 447 F. Supp. 2d 3, 8 (D. Mass. 2006). With respect to the causation element, "[s]o long as the misstatement or omission was material, the causal relation between violation and injury is sufficiently established" if "the proxy solicitation itself . . . was an essential link in the accomplishment of the transaction." TSC Indus., 426 U.S. at 444.

Finally, "under the additional pleading requirements imposed by the Private Securities Litigation Reform Act ("PSLRA"), in order to survive a motion to dismiss, the plaintiff must specify each statement alleged to have been misleading [or rendered misleading by a material omission] and the reason or reasons why the statement is misleading." Ganem v. InVivo Therapeutics Holdings Corp., 845 F.3d 447, 454–55 (1st Cir. 2017) (quotation omitted); 15 U.S.C. § 78u-4 ("In any private action arising under [the Exchange Act] in which the plaintiff

alleges that the defendant . . . (B) omitted to state a material fact . . . the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading.").

May alleges three kinds of material omissions in the proxy statement disseminated by American DG to its shareholders: omissions concerning (1) the events and processes leading up to the merger; (2) the inputs and considerations of American DG and Tecogen's financial analysts in forming fairness opinions; (3) information regarding American DG's Unfavorable Contract Liability ("UCL").

      a. *Material omissions concerning merger process*

The Tecogen-American DG merger was initially conceived of during discussions between John Hatsopoulos and Benjamin Locke. Doc. No. 34 at ¶¶ 8, 63. In March of 2016, Hatsopoulos and Locke presented the idea of the merger to the boards of American DG and Tecogen. Doc. No. 43-3 at 52. The boards each created a special committee to explore the proposed merger and negotiate price. Id. After the special committees concluded negotiations, American DG and Tecogen announced the agreed upon merger and informed shareholders that a vote would take place. Doc. Nos. 43-4. Tecogen and American DG then filed a joint proxy statement. See Doc. No. 43-3.

Paragraph 111 of the Complaint recites details about the merger process omitted from the proxy statement, which May alleges are material omissions. Doc. No. No. 34 at ¶ 111. For instance, the proxy statement offers no explanation for the late addition of a member, Klaskin, to the Special Committee of American DG ("the Special Committee"). Id. May, citing In re Saba Software, Inc. Stockholder Litig., No. CV 10697-VCS, 2017 WL 1201108, at *12 n.72 (Del. Ch. Mar. 31, 2017), argues the omission is material because defendants ought to have made an

"effort to dispel reasonable shareholder suspicion." Doc. No. 45 at 9. The case to which May cites, In re Saba Software, No. CV 10697-VCS, 2017 WL 1201108, concerns the omission from a proxy statement of an explanation for why a company repeatedly failed to meet past SEC deadlines—an issue that bore directly on shareholder assessment of the future value of their stock, as an explanation for the missed deadline would have guided shareholders as to whether the company would meet future deadlines. This omission is totally inapposite to the addition of a member to the Special Committee in the instant case. The addition of a Special Committee member may, as May argues, be "unusual," Doc. No. 45 at 8, but absent additional explanation from May as to why the reason for the late addition would be relevant to shareholders, May has failed to plausibly allege that a "shareholder would consider it important in deciding how to vote." TSC Indus., 426 U.S at 449.

May likewise contends the Proxy's failure "to disclose whether the Special Committee evaluated the fairness of the Convertible Debt Transactions, or whether it considered those Transactions when it recommended the Merger" are material omissions. Doc. No. 45 at 9. The Proxy statement explains that Special Committee discussions "included a potential transaction that would eliminate the ADGE [American DG] convertible debt." Doc. No. 43-3 at 102. The Proxy does not state whether the Special Committee discussed the fairness of the transactions or whether the transactions were specifically considered when (i.e. at the very meeting at which) the Special Committee formed its recommendation. Id. The Special Committee was not constituted to evaluate the fairness of the Convertible Debt Transactions but to "evaluate a merger with Tecogen," Doc. No. 43-3 at 102; therefore, the omission from the Proxy of a statement as to whether the special committee discussed or did not discuss the fairness of the transaction is neither "odd" (as May argues), Doc. No. 45 at 9, nor material. Likewise, the Proxy's failure to

"disclose whether the Special Committee considered the Convertible Debt Transactions . . . when recommending the Merger to the Board" is not material. From the Proxy's disclosure that the transactions were discussed and its disclosure that the Special Committee "determined to recommend to the ADGE [American DG] Board of Directors the approval of the Merger and the Merger Agreement," it can be assumed that consideration of the transactions was one factor among many that the Committee included within its decision-making process and that the Committee found it either not important, a negative sufficiently outweighed by other factors or a net positive.[3] A further explanation of when or how much the Committee considered the transactions would not have "significantly altered the 'total mix' of information made available" to shareholders. TSC Indus., 426 U.S. at 449.

Additionally, May alleges that the Proxy "failed to disclose the number of purportedly 'informal meetings' between John Hatsopoulos and Benjamin Locke prior to the Special Committee's involvement. Doc. No. 45 at 10. May argues that "many meetings between Hatsopoulos and Locke would suggest that the basic terms of the Merger Agreement were already hashed out before the intervention of a purportedly neutral and dispassionate special committee." Id. But May's allegation is purely conjectural. The number of meetings between

---

[3] May argues that had the Special Committee failed to discuss the convertible debt transactions when it decided to recommend the merger, "it would have demonstrated to shareholders that the Special Committee was . . . beholden to Hatsopoulos," but May has alleged no facts supporting his conjecture. Another reason that the Committee might have failed to discuss the convertible debt transactions is that the Committee had already sufficiently discussed them and drawn conclusions about the transactions impact on the Merger. See Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 9 (1st Cir. 2011) (quoting Twombly, 550 U.S. at 567) ("Plaintiffs . . . have not nudged their claims across the line from conceivable to plausible" where court finds "an obvious alternative explanation for the alleged behavior of the defendants."). These prior discussions, as well as discussions about other topics related to the American DG and Tecogen, would be in the minds of the Special Committee members when they formed a recommendation. Nothing requires the Special Committee to discuss every possible consideration at the final meeting at which it finalizes its recommendation.

Hatsopoulos and Locke might indicate that they spent time hashing out the details of the merger or it might indicate that they spent significant time disagreeing about how to proceed. May has not plausibly alleged that a reasonable shareholder "would consider [the number of meetings] important in deciding how to vote," TSC Indus., 426 U.S. at 449 (1976), nor has May alleged "why the [Proxy] is misleading" because of the omission. Ganem, 845 F.3d at 455.

Finally, May asserts the Proxy "failed to disclose whether Cassel [had] previously provided financial advisory services to Tecogen or ADGE [American DG]" prior to providing them services in conjunction with the merger. Doc. No. 45 at 11. May contends the omission is material because a board has a duty "to disclose potential conflicts of interest." Id. An omission of a discussion of a prior relationship between Cassel and American DG or Tecogen is only material if such a relationship in fact existed. May does not allege that such a relationship did exist nor does May allege any facts from which a plausible inference of a prior relationship may be drawn. See Doc. Nos. 34; 45. Any notion of prior dealings is "speculative." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 8 (1st Cir. 2011). There is no duty to disclose non-conflicts. See In re JCC Holding Co., Inc., 843 A.2d 713, 721 (Del. Ch. 2003) ("there is no obligation on the part of a board to disclose information that simply does not exist").

Thus, May has not adequately alleged that any of the omissions from the Proxy concerning the merger process were material omissions.

  b. *Material omissions concerning valuation analyses*

In addition to alleging materially misleading omissions concerning the merger process, May also alleges materially misleading omissions concerning the fairness opinions rendered by American DG and Tecogen's financial advisors. Doc. No. 34 at ¶¶ 103-04, 107.

> i. Cassel inputs

First, May alleges the Proxy omits three of the four financial inputs used by Cassel in performing its fairness analyses. Doc. No. 34 at ¶¶ 103-04. May alleges the omission of these inputs was material because Cassel's analysis was "fundamentally flawed and significantly undervalued [American DG]," as evidenced by the higher exchange ratio value and range of estimated equity value per American DG share calculated by Scarsdale, Tecogen's financial advisor. Id. at ¶ 105. Shareholders allegedly needed the omitted inputs to "recognize the illegitimacy" of Cassels' analysis. Id. at ¶ 106. May's pleading is inadequate for several reasons. First, there is no obligation that shareholders "be given all of the financial data they would need if they were making an independent determination of fair value." McMullin v. Beran, 765 A.2d 910, 925 (Del. 2000); accord Skeen v. Jo-Ann Stores, Inc., 750 A.2d 1170, 1174 (Del. 2000). Shareholders are entitled to only a "fair summary of the financial advisor's work." Novell, Inc. S'holder Litig., No. CIV.A. 6032-VCN, 2013 WL 322560, at *13 (Del. Ch. Jan. 3, 2013); accord Erickson v. Hutchinson Tech. Inc., 158 F. Supp. 2d 751, 758 (D. Minn. 2016). A summary is fair when it provides "an accurate description of the advisor's methodology and key assumptions." Bushansky v. Remy Int'l, Inc., __ F.3d ___, 2017 WL 3530108, at *7 (S.D. Ind. Aug. 16, 2017).

The Proxy statement includes detailed descriptions of the opinions and valuation methods of Scarsdale, Doc. No. 43-3 at 118-126, and Cassel, id. at 127-137, and attaches the full text of both opinions. The Proxy statement does not claim that the underlying fairness opinions are objective nor does it declare the summaries of the opinions provided in the Proxy are complete. See id. at 131 ("[The following] is not a complete description of all analyses underlying [Cassel's] opinion."); id. at 125 ("The foregoing summary of certain material financial analyses does not purport to be a complete description of the analyses or data presented by Scarsdale.").

9

Shareholders are cautioned in bold text that they "should read the [Scarsdale] opinion in its entirety for a discussion of the assumptions made, procedures followed, matters considered and qualifications and limitations upon the review undertaken," Doc. No. 43-3 at 118, and that the "summary of the [Cassel] opinion in this proxy statement/prospectus is qualified in its entirety by reference to the full text of the written opinion" which "sets forth the procedures followed, assumptions made, qualifications and limitations on the review undertaken." Id. at 127.

Second, to prevail, May must point to a statement in the proxy "that is rendered misleading by the operation of a materially omitted fact." Louisiana Mun. Police Employees Ret. Sys. v. Cooper Indus. plc, No. 12 CV 1750, 2012 WL 4958561, at *8 (N.D. Ohio Oct. 16, 2012); accord Hysong v. Encore Energy Partners LP, No. CIV.A. 11-781, 2011 WL 5509100, at *8 (D. Del. Nov. 10, 2011) ("[Plaintiff] must point to a statement that is misleading, or is made misleading by operation of a material omission. His failure to identify even one specific misleading statement cannot push his factual allegations over the speculative-level threshold."). "Although courts have held that information challenging . . . the legitimacy of the valuation can be material," this is so only when the omitted information was key to revealing "an assumption or fact relied on by the fairness opinion that is objectively false" Ridler v. Hutchinson Tech. Inc., 216 F. Supp. 3d 982, 988 (D. Minn. 2016). May alleges that the summary provided did "not constitute a fair summary," Doc. No. 45 at 12, but does not identify how the omission of Cassel's inputs obscured flaws in the analyst's fairness opinion. He "alleges no facts suggesting that the undisclosed information [the inputs] is inconsistent with, or otherwise significantly differs from, the disclosed information." See Skeen, 750 A.2d at 1174. For these reasons, he has not plausibly alleged a material omission as to the Cassel inputs.

ii. Further omissions concerning the financial advisors' valuation analysis

Paragraph one hundred and seven of the Complaint describes a series of additional omissions from the Proxy statement related to the fairness opinions rendered by American DG and Tecogen's financial advisors. Doc. No. 34 at ¶ 107. These allegations fail for the same reasons described above. May alleges that the Proxy "did not disclose the per share values of ADGE [American DG] and Tecogen that Cassel Salpeter calculated in either its DCF Analysis or its Selected Transactions Analysis," and the omission was material. Doc. No. 34 at ¶ 107. Again, May's allegation fails because May does not state how the omission made the Proxy false or how the omitted values were inconsistent with the summary presented in the Proxy. See Doc. No. 34. May has alleged that the information would have been helpful (it would "have allowed minority shareholders to compare the results of Cassel Salpeter's analysis to the companies' trading prices"), but that is not enough. "The PSLRA requires plaintiffs' complaint to 'specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading.'" ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 58 (1st Cir. 2008) (quoting 15 U.S.C. § 78u–4(b)(1)). Furthermore, shareholders have sufficient information from the Proxy and information that is publicly available to calculate the per share value of American DG and Tecogen. See Doc. No. 43-3 at 133-36. Thus, the omission is not material nor is it misleading.

May further claims that the Proxy omits "the criteria Cassel Salpeter used in selecting its comparative publicly traded companies." Doc. No. 34 at ¶ 107. May's allegation as to Cassel's criteria fails for two reasons: (1) the omission is not material; and (2) again, May has failed to allege how the omission rendered the Proxy misleading. The omission of the selection criteria is not material because an interested shareholder had the option of researching the comparators and determining for herself whether the comparators were good ones. For the same reason, the

omission is not misleading. The omission of why Cassel selected the comparators does not mask whether the comparators are in fact good comparators. Regardless of the reason for their selection, the comparators are disclosed and shareholders may come to their own conclusions about whether the comparators are good ones. Thus, May has failed to plausibly allege that the omission rendered the Proxy false or misleading.

May likewise alleges "the Proxy did not disclose why Cassel Salpeter did not include any/all of ADGE's [American DG's] identified competitors in its Selected Companies Analysis" and "The Proxy did not disclose why either company's financial advisor failed to conduct a contributions analysis of the two companies." Doc. No. 34 at ¶ 107. May identifies no rationale for why the financial analysts' reasons as to either point are relevant to shareholders or how the omissions render the Proxy false or misleading. An "omission by itself cannot be false or misleading, but it can leave unsaid something that is required to prevent another statement from being false or misleading. Logic dictates that before one can determine if 'something' is false or misleading, that 'something' must be identified." Hysong v. Encore Energy Partners LP, No. CIV.A. 11-781, 2011 WL 5509100, at *5 (D. Del. Nov. 10, 2011). Because May does not identify any statement in the Proxy made misleading by these omissions, May's allegations are merely speculative. Twombly, 550 U.S. at 555. Moreover, the omission is obvious from the face of the proxy. Shareholders reading the proxy's list of companies in the Selected Companies Analysis would know, or could determine, that no competitor was included in the list and draw their own conclusions from that fact. Likewise, shareholders could draw their own conclusions from the fact that the advisors did not conduct a contributions analysis.

Finally, May claims the Proxy "did not disclose whether Scarsdale (unlike Cassel Salpeter) performed various financial analyses . . . to derive ranges of values for Tecogen." Doc.

12

No. 34 at ¶ 107. Again, May offers no explanation as to why this omission rendered the proxy misleading nor why the omitted fact would be of significance to shareholders. To the extent that May's argument is that the valuation analysis was not mentioned because it was not done when it should have been done, such an allegation is purely conjectural and, in any event, is an allegation, not about the truth of the Proxy, but about the methods of Scarsdale. "Disagreement over the subjective methodology in valuing a company" is not a material omission. Ridler, 216 F. Supp. 3d at 988; see id. (distinguishing cases where plaintiffs "point to an assumption or fact relied on by the fairness opinion that is objectively false" (actionable) from the Ridler case where Plaintiff disputed the analyst's failure to apply "a higher multiple to [defendant's] financials" (non-actionable)).

        c.   ***Omissions concerning Unfavorable Contract Liability***

May claims the Proxy also omitted other information related to the financial analyses presented in the Proxy. Specifically, May alleges that the Proxy "did not disclose whether either [American DG] or Tecogen, or their financial advisors, included the amortization of . . . Unfavorable Contract Liability ("UCL") in their projected EBITDA or DCF analyses," arguing that the inclusion of the amortization with respect to Tecogen but not American DG "would have artificially inflated Tecogen's projected profits[.]" Doc. No. 34 at ¶ 107. First, the Court notes that EBITDA ("a company's earnings before interest, taxes, depreciation, and amortization") by definition excludes amortization deductions—it is the measure of a company's net earnings before amortization (as well as other values) is subtracted. See *Earnings*, Black's Law Dictionary 585 (9th ed. 2009). Regardless, May has not alleged a material omission. This is so because May's factual "pleadings fail to convince us that they have stated a claim that [the UCL's were or were] not considered" in Tecogen's or American DG's valuations. Glassman v.

13

Computervision Corp., 90 F.3d 617, 629 (1st Cir. 1996). May supposes "if, for example, Tecogen's projected EBITDA or DCF analysis included the UCL, but ADGE's [American DG's] did not, that would have artificially inflated Tecogen's projected profits relative to ADGE's." Doc. No. 34 at ¶ 107. May alleges no facts supporting his speculation. May is therefore operating in "the realm of mere conjecture," insufficient to withstand a motion to dismiss. In re Curran, 855 F.3d 19, 25 (1st Cir. 2017); see Dewey v. University of New Hampshire, 694 F.2d 1, 3 (1st Cir.1982) ("it is not enough to allege a general scenario"), cert. denied, 461 U.S. 944 (1983) ("it is not enough to allege a general scenario").[4]

May additionally alleges the Proxy's failure to "disclose the length of the contracts comprising the UCL" was a material omission. Doc. No. 34 at ¶ 107. The Proxy discloses the UCLs, their value, the assumptions made in their calculation, and the value of amortization over a fifteen year period; however, it does not disclose their expiration date. Doc. No. 43-3 at 19-21. May alleges the omission is material because "if the unfavorable contracts were to expire in a relatively short amount of time," American DG's stockholders would have considered that fact when determining how to vote. Doc. No. 34 at ¶ 107. First, as articulated above, omitted facts are not materially misleading "simply because they might be helpful." Globis Partners, L.P., Civ. A. No. 1577-VCP, 2007 WL 4292024, at *12. Second, although May speculates that the contracts *might* "expire in a relatively short time," May does not allege that they in fact do. Id. May's suppositions are insufficient. See Dewey, 694 F.2d at 3. May has not alleged facts supporting the

---

[4] Essentially, May's view, alleged in the complaint, is that the defendants "undervalued [American DG]." Doc. No. 34 at ¶ 10. May goes on to speculate as to what mechanisms might be responsible for the undervaluation (e.g. failure to include amortization or contribution analysis), and then alleges that the Proxy's failure to discuss these methods (which may or may not have in fact been employed) is a material omission. This is not enough. "It is plaintiffs' responsibility to plead factual allegations, not hypotheticals." Glassman v. Computervision Corp., 90 F.3d 617, 629 (1st Cir. 1996).

conclusion that the contracts in fact expired in the near future or that omission of the expiration dates was otherwise misleading or material to shareholders.

For the forgoing reasons, May has not stated a plausible Section 14(a) claim, and the motion to dismiss as to Count I is ALLOWED as to all parties.

B.  Section 20(a) Claims

Count II of the Complaint alleges violations of Section 20(a) of the Exchange Act ("Section 20(a)"), 15 U.S.C. § 78t. Doc. No. 34 at ¶¶ 126-133. Section 20(a) provides that "[e]very person who, directly or indirectly, controls any persons liable under [the Exchange Act] shall also be liable jointly and severally" unless "the controlling person acted in good faith." Id. at § 78t(a). Liability under Section 20(a) requires a "primary violation." Aldridge v. A.T. Cross Corp., 284 F.3d 72, 84 (1st Cir. 2002). As May has failed to sufficiently allege a claim under Section 14(a), see supra at 3-14, he has not alleged a predicate violation. Accordingly, May has not alleged a viable Section 20(a) claim, and the Court ALLOWS Defendants' motion to dismiss as to Count II.

C.  State Law Claims

Counts III through V of the Complaint allege claims for breach of fiduciary duty under Massachusetts state law. Doc. No. 34 at ¶¶ 134-45. The state law claims do not raise a federal question. 28 U.S.C. § 1331; Viqueira v. First Bank, 140 F.3d 12, 17 (1st Cir.1998). The parties do not argue otherwise. The Defendants argue the Court does not have subject matter jurisdiction over May's state law claims because the parties are not diverse. Doc. No. 42 at 29-30.

The Court possesses jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367, which provides: "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that . . . form part of

the same case or controversy." 28 U.S.C. § 1367(a). This is the rare case where "the interests of fairness, judicial economy, and convenience" counsel in favor of exercising supplemental jurisdiction. See Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998). Accordingly, the Court exercises supplemental jurisdiction over May's state law claims and DENIES the Defendants' motion to dismiss as to Counts III, IV, and V.

IV. <u>CONCLUSION</u>

Based on the forgoing, the Defendants' Motion to Dismiss (Doc. No. 41) is ALLOWED as to Counts I and II; and DENIED as to Counts III, IV, and V. Defendants shall answer by March 12, 2018. The clerk shall schedule a Rule 16 conference.

SO ORDERED.

/s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge